UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Keith Hartop,

    Plaintiff,

v.

Deutsche Bank National Trust Co., as
Trustee, for the Registered Holders of
Argent Securities, Inc., Asset-Backed Pass-
Through Certifications, Series 2006 W-1,

    Defendant.
                                        /

Case No. 10-10078

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT [10]**

In this action, the Court must determine whether Defendant Deutsche Bank National Trust Co., as Trustee, for the Registered Holders of Argent Securities, Inc., Asset-Backed Pass-Through Certifications, Series 2006 W-1 ("Defendant") violated Michigan foreclosure law and perpetrated fraud against Plaintiff Keith Hartop ("Plaintiff") when it foreclosed Plaintiff's property after Plaintiff failed to pay his mortgage for over two years. This matter is before the Court on Defendant's Motion for Judgment on the Pleadings and for Summary Judgment. Because the Court finds that Defendant did not violate Michigan foreclosure law when it foreclosed Plaintiff's property and Plaintiff has not pleaded facts that would warrant the Court finding fraud in the foreclosure proceedings, the Court GRANTS Defendant's motion.

**I.    Facts**

This controversy comes from Plaintiff's execution of a mortgage on a piece of property and his attempts to keep the property when he has failed to pay the mortgage amounts due.

On November 8, 2005, Plaintiff executed a mortgage on his property located at 6126 Hall Road, Dryden, Michigan (the "Property") in favor of Argent Mortgage Company, LLC ("AMC"). (Def.'s Mot. for Summ. J., Ex. A.) AMC properly recorded the mortgage. (*Id.*)

Less than a year later, on June 28, 2006, Plaintiff entered into a forbearance agreement with AMC. (Compl., Ex B.) Six months after that, AMC cancelled the forbearance agreement because Plaintiff failed to make the December 1, 2006, forbearance payment. (*Id.*) AMC informed Plaintiff that it may begin collecting on the loan and that the Property's foreclosure was a possibility. (*Id.*) On January 23, 2007, AMC sent Plaintiff a "Notice of Intention to Foreclose" letter stating that it was going to begin foreclosure proceedings if Plaintiff did not make the required mortgage payment. (Compl., Ex C.) Plaintiff claims he paid the required amount. (Compl. ¶ 7) AMC sent another "Notice of Intention" letter on April 13, 2007, with terms similar to the January 23 letter. (Compl., Ex. D.)

In July, 2007, Plaintiff filed for bankruptcy. (Compl. ¶ 6.) One month later, Plaintiff entered into a reaffirmation agreement for the mortgage. (Compl. ¶ 10.) One month after the reaffirmation agreement, Plaintiff claims AMC sent another letter to Plaintiff indicating that it wanted to help Plaintiff keep the Property. (Compl. ¶ 11.)

On September 14, 2007, AMC transferred the loan to Citi Residential Lending, Inc. ("Citi") (Compl. ¶ 12.) In early October, 2007, Citi submitted a "Recission of Reaffirmation Agreement" to the bankruptcy court, stating that Citi revoked the Reaffirmation Agreement

2

with Plaintiff. (Compl., Ex. E.) The submission also stated that a valid foreclosure sale of the Property was held on October 3, 2007. (*Id.*)[1] On October 22, 2007, Citi sent Plaintiff a "Notice of Interest Rate Change and Monthly Payment Change," indicating that Plaintiff would be subject to a new payment amount. (Compl., Ex. F.)

On January 18, 2008, Citi's debt collector sent Plaintiff's bankruptcy lawyer a letter providing Plaintiff the opportunity to reaffirm the Property's mortgage. (Compl., Ex. G.) Three months later, on March 21, 2008, a motion was filed for approval of the reaffirmation agreement; the court approved the agreement on May 22. (Compl. ¶ 16; Compl., Ex. I.)[2] In April, 2008, Citi indicated to Plaintiff that it was aware that Plaintiff was in bankruptcy, that it held a note secured by a mortgage on the Property, and that it was changing the interest rate on the note. (Compl., Ex. H.) On May 22, 2008, Plaintiff received a foreclosure notice. (Compl., Ex. J.) A little over a week later, the bankruptcy court discharged Plaintiff's bankruptcy. (Compl. ¶ 20.)

Although a foreclosure sale had been scheduled, Plaintiff received a letter from Postestivo & Associates, P.C., Citi's counsel, on June 17, 2008, canceling a foreclosure sale scheduled for June 25, 2008. (Compl., Ex. K.) After that letter, on June 20, 2008, Plaintiff received another notice of intent to foreclose the Property from Citi. (Compl., Ex. L.)

---

[1] Plaintiff claims this letter was signed on October 22, 2007, the actual document's date is illegible, but looks like October 12 or 18, but not 22. From the pleadings, this foreclosure does not seem to have taken place, nor is it the subject of this motion.

[2] Neither party has included the motion in their filings to this Court.

3

On August 1, 2008, AMC assigned the mortgage to Defendant. (Def.'s Mot. for Summ. J., Ex. B.) Defendant also properly recorded the mortgage's assignment. (*Id.*) On August 13, 2008, an official notice of foreclosure was posted on the Property. (Def.'s Mot. for Summ. J., Ex. F.) A foreclosure notice was published for four consecutive weeks, beginning on August 6, 2008. (Def.'s Mot. for Summ. J., Ex. G.)

Plaintiff states he made the payment to cure the notice of intent to foreclose and that he was unaware that Citi was taking any action against the Property in August and September, 2008. (Compl. ¶ 23.) Although he made this statement, Plaintiff has not made a mortgage payment since March 27, 2007, which Plaintiff made only to satisfy a December, 2006, outstanding payment. (Magaddino Aff. ¶¶ 5, 6, Def.'s Mot. for Summ. J., Ex. D.)

On October 8, 2008, a sheriff's deed on the mortgage sale was executed. (Def.'s Mot. for Sum. J., Ex. H.) At the end of October, Plaintiff received another interest change notice. (Compl., Ex. L2.)

On January 23, 2009, Citi informed Plaintiff that it had transferred Plaintiff's loan to American Home Mortgage Servicing, Inc. ("AHMSI"). (Compl., Ex. M; Def.'s Mot. for Summ. J., Ex. C.) Plaintiff claims he did not receive anything from AHMSI, save for various letters and notices. (Compl. ¶ 26; Compl., Ex. N.)

At the end of 2009, Plaintiff learned that the house had been foreclosed by advertisement and that a sheriff's deed had been given on October 8, 2008. (Compl., Ex. O.) The statutory redemption period ended on October 8, 2009. (Def.'s Mot. for Summ. J., Ex. I.) Plaintiff asserts he did not receive notice of the foreclosure. (Compl. ¶ 28) He

also claims that the foreclosure notice violated Michigan law because it did not list the appropriate parties. (Compl. ¶ 28.)

On September 1, 2009, Plaintiff received a letter stating the redemption amount pursuant to the 2008 foreclosure. (Compl. ¶ 29.) Plaintiff claims he made every effort to remedy the foreclosure, including writing letters and requesting assistance. (Compl. ¶ 30.) He believes he was given the run-around. (Compl. ¶ 30.) But the letter Plaintiff references in his complaint is correspondence in which AHMSI states that it received a letter from Plaintiff and that it is the current mortgage servicer. (Compl., Ex. P.) In the letter, AHMSI informs Plaintiff that if Plaintiff has questions regarding his mortgage prior to February, 2009, Plaintiff should contact Citi. (*Id.*) The letter also informed Plaintiff that his only remedy for the October, 2008, foreclosure sale was a full pay off of the unpaid balance. (*Id.*)

On October 12, 2009, AHMSI sent Plaintiff another letter stating that it had not heard from Plaintiff in over thirty days and that Plaintiff had not responded to AHMSI's Home Affordable Modification Program package inquiry. (Compl. ¶ 31.) As late as November 12, 2009, Plaintiff believes AHMSI was working with him on a loan modification. (Compl. ¶ 32.) But the October letter simply informs Plaintiff of those people who are authorized to receive information regarding the mortgage loan. (Compl., Ex. R.)

On December 2, 2009, a landlord-tenant summons set an eviction hearing for December 14, 2009. (Compl. ¶ 33.)

On December 11, 2009, Plaintiff filed a petition in Michigan state court for declaratory judgment and injunctive relief and complaint against Defendant. (Docket Text #1.)

Defendant removed the action to this Court on January 8, 2010, based on diversity jurisdiction. (*Id.*)

**II. Standard**

**a. Rule 12(c) Standard**

At any time after the pleadings close, but before trial commences, a party may move for a judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The standard of review is the same *de novo* standard applicable to a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

The Court reviews the motion in a light most favorable to the plaintiff, assumes that the plaintiff's factual allegations are true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Id.* This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). *See also Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336(6th Cir. 2007).

If the court, however, considers matters outside the pleadings, it must treat the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See Rubin v. Schottenstein, Zox, & Dunn*, 110 F.3d 1247, 1253 (6th Cir. 1997).

**b. Rule 56 Motion for Summary Judgment**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.  Analysis

Plaintiff makes three arguments why the Court should set aside the Property's foreclosure. His first two arguments allege violations of Michigan law: that the foreclosure notice did not list AHMSI as the foreclosing assignee and that Defendant failed to comply

with the statutory requirements for foreclosure by advertisement provided in Mich. Comp. Laws. Ann. § 600.3208 and Mich. Comp. Laws Ann. § 600.3204(4). His third argument alleges that the Court should award him relief based on fraud and mistake, although Plaintiff has not specifically articulated a fraud and mistake count.

Plaintiff's claims fail because AHMSI was not the foreclosing assignee, Defendant did not violate the applicable Michigan foreclosure laws, and Plaintiff failed to properly plead his fraud and mistake cause of action.

### A. The Notice of Foreclosure by Advertisement Named the Proper Parties

Plaintiff alleges that Defendant failed to list the proper parties on the foreclosure notice. Michigan law mandates certain requirements for a lawful notice of foreclosure by advertisement. One of the requirements is that the notice must include the names of the mortgagor, the original mortgagee, and the foreclosing assignee. Mich. Comp. Laws Ann. § 600.3212(a). Here, Defendant appropriately appeared as the foreclosing assignee and was the mortgagee of record on the date of the foreclosure sale, AMC appeared as the original mortgagee, and Plaintiff appears as the mortgagor. (Def.'s Mot. for Summ. J., Exs. B, H.) The statutorily required parties, therefore, appeared on the notice.

Plaintiff believes that the notice of foreclosure was defective because AHMSI was not on the notice of foreclosure. But even if AHMSI was the mortgage servicer at the time of the foreclosure sale, Michigan law does not require a mortgage servicer to be on the notice. In *Barthlow v. Federal Home Loan Mortgage Corp.*, No. 288427, 2010 WL 446952, at *1 (Mich. Ct. App. Feb. 9, 2010) the plaintiff presented an argument similar to Plaintiff's here. There, the plaintiff alleged that the advertisement was fraudulent because the mortgage

8

servicer, from whom the plaintiff received a notice of foreclosure, was not listed on the advertisement. *Id.* The court held that the advertisement was not in violation of Michigan law because § 600.3212 does not require the mortgage servicer to appear on the advertisement. *Id.* Since the plaintiff presented no facts that suggested that the mortgage servicer was anything but that, "the advertisement was not a material misrepresentation constituting fraud." *Id.*

Here, AHMSI became the mortgage servicer on February 11, 2009, after the foreclosure sale. (Compl., Ex. M; Def.'s Mot. for Summ. J., Ex. C.) Because Michigan law did not require AHMSI to appear on the notice Defendant therefore did not violate Mich. Comp. Laws Ann. § 600.3212(a).

### B. Defendant Gave Plaintiff the Required Notice

Michigan's foreclosure by advertisement statute provides that "[e]very mortgage of real estate which contains a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the matter specified[.]" Mich. Comp. Laws. Ann. § 600.3201. Plaintiff has alleged that Defendant did not give the required foreclosure notice as required by Mich. Comp. Laws. Ann. § 600.3208. That section requires a foreclosure publication for four consecutive weeks in a newspaper published in the county in which the foreclosure property is to be sold as well as posting foreclosure notice on the foreclosure property within 15 days after the first publication of the notice. Mich. Comp. Laws. Ann. § 600.3208. Defendant published notice of the Property's foreclosure for four consecutive weeks, beginning on August 6, 2008, as required by § 600.3208. (Compl., Ex. L; Def.'s Mot. for Summ. J., Exs. E, F, G.) On August 13, 2008, Defendant posted notice of the Property's foreclosure on the Property

itself. (Def.'s Mot. for Summ. J., Ex. F.) Since the notice was posted on the Property within 15 days of the first publication, Defendant complied with § 600.3208. Defendant therefore has not violated § 600.3208 since it properly published and posted notice and no personal notice is required. *See Moss v. Keary*, 204 N.W. 93, 94 (Mich. 1925).

Plaintiff has also alleged that Defendant violated Mich. Comp. Laws Ann. § 600.3204(4) in failing to give the proper foreclosure by advertisement notice. Although § 600.3204(4) does list notice requirements that a mortgagee must fulfill before commencing a foreclosure by advertisement, the section did not become effective until July 5, 2009, and does not apply to those proceedings in which the first notice of foreclosure was posted before the effective date. *Anderson v Fremont Inv. & Loan,* No. 287397, 2009 WL 3837389, at *3, n. 8 (Mich. Ct. App. Nov. 17, 2009) (quotation marks omitted). Here, since the first notice of foreclosure appeared on August 6, 2008, § 600.3204(4) does not apply.

### C. Plaintiff Fails to State a Cause of Action for Fraud or Mistake

Plaintiff has requested the Court to deny this motion because of Defendant's alleged fraud and mistake. But Plaintiff's fraud and mistake claim fails because he has not supported his claim with any admissible facts or evidence. Regarding fraud, he has failed to show the reasonableness of his reliance and he has failed to plead fraud with the particularly required by Fed. R. Civ. P. 9(b). For Plaintiff to succeed on his fraud claim he must prove that:

    1. Defendant made a material representation;
    2. the representation was false;
    3. when Defendant made the representation, Defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion;
    4. Defendant made the representation with the intention that Plaintiff would act upon it;

10

5. Plaintiff acted in reliance upon it; and
    6. Plaintiff suffered damage.

*Cummins v. Robinson Twp.*, 770 N.W.2d 421, 435 (Mich. Ct. App. 2009). Plaintiff must prove each of these facts with a reasonable degree of certainty. *Hi-Way Motor Co. v. International Harvester Co.*, 247 N.W.2d 813, 813 (Mich. 1976) (quoting *Candler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919)). If Plaintiff fails to prove any one of these facts, he cannot sustain his fraud claim. *Id.* Plaintiff must also prove that the fraud stemmed from a false statement relating to past or existing facts; promises regarding the future are contractual and will not support a fraud claim. *Cummins*, 770 N.W.2d at 435. (Quotation marks and citation omitted.) In addition, Plaintiff must prove that he reasonably relief on the false representation, because "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Id.* (Quotation marks and citation omitted.)

To meet the particularity requirements of Rule 9(b), Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D. Ohio 1998). At a minimum, Plaintiff "must allege the time, place and contents of the misrepresentations upon which they relied." *Id.* Further, to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555).

Here, Plaintiff has not pleaded fraud sufficiently. He states that the letter informing him that the June 25, 2008, foreclosure was cancelled was untrue and misled him. (Compl. ¶ 43; Compl., Ex. K.) Yet he received another notice of foreclosure after he received the letter canceling the sale. (Compl., Ex. L.) This second letter should have put him on notice that he needed to do further investigation regarding the status of any foreclosure. He also states that he was given the "runaround" when he attempted to remedy the foreclosure. (Compl. ¶ 29.) This allegation in his complaint does not have merit, at least to the letter he references. The letter does not infer any type of evasion. In the letter, AHMSI responds to Plaintiff that it does not have the information that Plaintiff requests and that Plaintiff must contact Citi, the previous mortgage servicer. (Compl., Ex. P.) These two instances that appear to have caused Plaintiff confusion do not amount to fraud. Plaintiff has offered nothing to prove fraud. He offers no specifics as to time, place, and contents of the misrepresentations upon which he relied. He simply states that he was misled and requests the Court to set aside the foreclosure for fraud and mistake. Without a sufficient fraud allegation, the Court cannot entertain his fraud claim.

To the extent that Plaintiff alleges mistake (he asks the Court to set aside the foreclosure sale for mistake), his allegation fails. In Michigan, "to reform a written instrument on the ground of mistake, the mistake must be mutual and common to both parties to the contract." *Emery v. Clark*, 6 N.W.2d 746, 751 (1942) (citation omitted). A party may also seek reformation of a written instrument if there is mistake on one party's side, and fraud on the other's. *Madias v. Madias Bros., Inc.*, No. 188697, 1997 WL 33352833, at *1 (Mich. Ct. App. 1997.) The party seeking reformation, here, Plaintiff, must prove the mutual mistake by clear and convincing evidence. *Emery*, 6 N.W.2d at 751.

Because Plaintiff has alleged no facts that would support mistake or fraud, his claim must fail. *See Gortney v. Norfolk & Western Railway Co.*, 549 N.W.2d 612, 616 (Mich. Ct. App. 1996) (holding that summary disposition was appropriate when the plaintiff had "documented no facts in support of her contention [of mistake]," and therefore failed to create a genuine issue of material fact to survive summary disposition).

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motion on the Pleadings and For Summary Judgment.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 13, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 13, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager